**CONTINUATION OF APPLICATION FOR A SEARCH WARRANT**

1.  I, Theodore Westra, am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF), in the Detroit Field Division, Grand Rapids Field Office, and have been so employed since January 2015. Prior to my employment with ATF, I was a Certified Police Officer in Michigan, for since 1998. During the last six (6) years in my role as a Public Safety Officer, I served as a sworn Task Force Officer for the Drug Enforcement Administration (DEA). I have participated in numerous investigations involving violations of federal firearms and narcotics laws, resulting in the arrest of criminal defendants and the seizure of firearms and narcotics.

**INTRODUCTION AND PURPOSE OF THE WARRANT**

2.  I make this continuation in support of an application for a search warrant to conduct a DNA buccal swab from the person of **Demario SIMPSON**, of Kalamazoo, Michigan, born in July of 1987, for evidence of criminal activity including being a felon in possession of a firearm, a violation of 18 U.S.C. § 922(g)(1); and possession of a firearm in furtherance of a drug trafficking crime, a violation of 18 U.S.C. § 924(c)(1).

3.  As set forth herein, probable cause exists to believe there has been a violation of Title 18 U.S.C. § 922(g)(1) [convicted felon in possession of a firearm] and Title 18 U.S.C. § 924(c) [possession of a firearm in furtherance of drug trafficking] and that evidence of such crimes is likely to be found in the comparison of DNA on a buccal swab from the person of **Demario SIMPSON** to the DNA collected off a firearm seized at the time of his arrest on or about May 15, 2019**.**

4.  I am familiar with the information contained in this continuation based upon the investigation I have conducted, and based on information provided to me by other law

enforcement officers who worked on this investigation. The facts in this continuation come from my personal knowledge, training, and experience, and information obtained from other agents and witnesses. Since this continuation is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause to believe that evidence of violations of 18 U.S.C. § 922(g)(1), & § 924(c) will be located in the comparison of the DNA buccal swab of Demario SIMPSON to the DNA collected from one of the firearms seized during the incident.

### FACTS SUPPORTING PROBABLE CAUSE

1. On May 14, 2019 the Crime Reduction Team (CRT) of the Kalamazoo Department of Public Safety (KDPS) received complaints regarding suspected drug trafficking, weapons violations, and gun shots near Krom Street in Kalamazoo, Michigan. After the KDPS officers conducted surveillance on a group of several male suspects in the 1300 block of Krom Street, KDPS officers contacted and arrested four (4) individuals for weapons violations and possession of distribution quantities of heroin. KDPS officers seized: three (3) handgun firearms, two (2) baggies containing 8.52 grams and 9.01 grams of heroin, a digital scale, packaging papers, and another small bindle containing 0.14 grams of heroin. These arrests and seizures took place after midnight, making the date May 15, 2019.

2. While conducting this surveillance in the 1300 block of Krom, KDPS officers observed a Dodge Charger arrive and park in front of 1316 Krom Street. Police observed three (3) men exit the vehicle (later identified as) Robert LOVE, Demario SIMPSON, and Travis FARRIS. Officers knew that LOVE was an active gang member and violent priority offender. Officers also recognized SIMPSON and later identified the third person as Travis FARRIS.

2

Police observed LOVE, SIMPSON, and FARRIS approach a small group of people standing near the front porch of 1316 Krom Street.  Officers identified one of the men on the porch as Cornell GORDON.

3.     KDPS Officers observed FARRIS remove a large pistol from his pocket, display it to the group, and then conceal it again in his pants waistband.  At this point, officers called for additional units in order to make contact with the group under surveillance.  However, before additional units arrived, LOVE, SIMPSON, and GORDON got into the Dodge Charger and FARRIS got into in driver's seat.  The group then pulled away in the Dodge Charger and traveled a few blocks and parked on Bush Street in front of a vacant lot/wooded area.  Officers then observed FARRIS exit the vehicle and walk to the nearby vacant lot/wooded area.

4.     KDPS officers determined they would approach the suspects on foot, and as police passed the lot they saw several individuals using their cell phone lights to search for something on the ground in the vacant lot/wooded area.  Police believed that the four persons were searching for pistols that had been discarded in the area.

5.     Upon seeing the KDPS officers arriving on foot, three (3) of the males searching with their cell phone lights ran, fleeing southbound toward Bush Street.  While Demario SIMPSON was running from officers, got his feet caught in the brush and fell to the ground.  Police were able to quickly apprehend SIMPSON.   The fourth male, FARRIS, did not flee and was arrested by KDPS officers.

6.     SIMPSON consented to a search of his person.  While conducting a pat down of SIMPSON police noted that SIMPSON was squeezing his buttocks tightly together, recognizing this as a common tactic by persons hiding drugs in their buttocks.  The officer slid his hand alongside the outside of SIMPSONS backside and felt a tied off baggie with suspected controlled

substances.  When the officer told SIMPSON he knew SIMPSON was holding drugs in his buttocks, SIMPSON pulled out a large bag of heroin and dropped it to the ground in front of the officer.  Lab results determined the baggie contained 8.52 grams of heroin.

      7.      A Taurus, 9mm, semi-automatic pistol with serial number TL S48022 was located 1-2 feet of where SIMPSON fell while attempting to flee police and was subsequently apprehended, next to the cell phone that SIMPSON claimed ownership.

      8.      SIMPSON waived his Miranda rights and agreed to speak with arresting officers.  SIMPSON denied possessing the firearm, but admitted the cell phone located by the pistol was his.  SIMPSON provided the passcode, which unlocked the cell phone located next to the firearm.

      9.      Felon in Possession of a Firearm 18 U.S.C. § 922(g)(1).  Elements include: (1) the defendant has been convicted of a crime punishable by imprisonment for more than one year, (2) the defendant knowingly possessed a firearm, and (3) the firearm crossed a state line prior to the alleged possession.  *Sixth Circuit Pattern Criminal Jury Instruction 12.01*.  Under the new Supreme Court holding in *Rehaif*, we must also show that a person of restricted status knows about that status, or at least the facts giving rise to it, when he possessed a firearm or ammunition.  SIMPSON has each been convicted of felonies that disqualify him from lawfully possessing a firearm.  The proximity of the firearm to the location where SIMPSON was arrested and his cellphone tie him to the weapon.  SIMPSON's attempts to discard the firearm when police arrived on scene is behavior indicative of a person that knows they are not legally eligible to possess a firearm.  Your Affiant prepared a nexus report indicating that the firearm was not manufactured in Michigan and therefore affected interstate commerce.

10. Possession of a Firearm in Furtherance of Drug Trafficking, 18 U.S.C. § 924(c)(1)(A)(i). Elements include: (1) the defendant committed a drug trafficking crime, (2) the defendant knowingly possessed a firearm, and (3) the possession of the firearm was in furtherance of the drug trafficking crime. The following factors should be considered in deciding the third element: "(1) whether the firearm was strategically located so that it was quickly and easily available for use; (2) whether the firearm was loaded; (3) the type of weapon; (4) whether possession of the firearm was legal; (5) the type of drug trafficking crime; and (6) the time and circumstances under which the firearm was found." *Sixth Circuit Pattern Criminal Jury Instruction 12.03*.

11. The firearm was found near where police arrested him during his attempt to flee the area. The gun was found near SIMPSON's personal cell phone. The firearm was in close proximity to the distribution quantities of heroin. Based on my training and experience, I know that firearms are frequently possessed by drug traffickers to ensure safety of their persons and property while trafficking drugs. SIMPSON illegally possessed the loaded, 9mm semi-automatic pistol in furtherance of his heroin trafficking.

12. The United States Attorney's Office has informed me that the Fifth Amendment privilege against self-incrimination does not preclude the use of one's body as evidence and directed me to *Schmerber v. California*, 384 U.S. 757, 765 (1985); *Wilson v. Collins*, 517 F.3d 421, 431 (6th Cir. 2008); and *McVeigh v. Smith*, 872 F.2d 725, 727-28 (6th Cir. 1989). The method of collecting the DNA by buccal swab is painless, safe, minimally invasive, and a common way to collect DNA: it uses a cotton-tipped applicator that touches the inside of the person's cheek to collect a sample of cells therein. I know from training and experience that the

United States Marshal's Service collects DNA the same way when defendants are brought in for processing, but a separate warrant is required to use the DNA for evidence of criminal activity.

## CONCLUSION

13.   I respectfully submit that there is probable cause to believe that a DNA buccal swab of the person of **Demario SIMPSON** will produce evidence of a crime in violations of 18 U.S.C. § 922(g)(1) & 924(c).

14.   Wherefore, by this continuation and application, I respectfully request that the Court issue a search warrant that would allow agents to search for and seize DNA evidence from **SIMPSON's** person.